UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT A. CARNELL,

   Petitioner,

       v.                                Civil No. 23-cv-3198-JPG

UNITED STATES OF AMERICA,          Criminal No 18-cr-40066-JPG

   Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Scott A. Carnell's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government has responded to the motion (Doc. 15). Carnell has not replied to that response although he was given an opportunity to do so.

**I.  Background**

In November 2018, Carnell pleaded guilty to one count of conspiring to distribute more than 50 grams of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a), (b)(1)(B), and 846. The parties did not reach an agreement on the plea, so Carnell entered an "open" plea. Attorney Robert Elovitz represented Carnell at all relevant times.

In written objections to the initial Presentence Investigation Report ("PSR"), Carnell objected to, among other things, the sources of information to support his relevant conduct of 2.37 kilograms of methamphetamine "ice." At sentencing, Carnell withdrew his objection to the quantity of his relevant conduct, although he maintained it was not "ice."

The Court used the U.S. Sentencing Guidelines ("U.S.S.G.") base offense levels for methamphetamine "ice" when it sentenced Carnell to serve 192 months in prison. Carnell appealed his sentence to the United States Court of Appeals for the Seventh Circuit, which in

August 2020 reversed the Court's judgment. *United States v. Carnell*, 972 F.3d 932 (7th Cir. 2020). The Court of Appeals held that the Court erred in sentencing Carnell based the U.S.S.G. base offense level for methamphetamine "ice" rather than for a "mixture and substance containing methamphetamine" because the Government had not proved the methamphetamine was of the purity (80%) to be considered "ice." *See id.* at 943.

In June 2021, the Court resentenced Carnell based on a relevant conduct finding of 2.37 kilograms of a "mixture and substance containing methamphetamine" and arrived at a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4).[1] This offense level was reduced by 3 points for timely acceptance of responsibility for a total offense level of 29. The Court further found Carnell's criminal history category had increased since his first sentencing based on convictions that had not yet occurred at the time of his earlier sentencing. The Court sentenced Carnell to serve 165 months in prison to run consecutively to existing and expected state sentences.

Carnell again appealed, and this time the Court of Appeals affirmed his sentence. *United States v. Carnell*, 35 F.4th 1092 (7th Cir. 2022). It issued that decision on June 2, 2022. The petitioner did not seek a writ of *certiorari* from the U.S. Supreme Court.

In his § 2255 motion, the petitioner raises the following claims:

Ground 1: ineffective assistance of counsel in violation of the Sixth Amendment because counsel coerced him into (1) pleading guilty by misrepresenting the potential sentence and (2) waiving objection to the Presentence Investigation Report's finding of relevant conduct by inaccurately and without foundation threatening a longer sentence if he did not waive his objection; and

Ground 2: a claim that, at the Government's improper urging, the Court went beyond the scope of the remand to recalculated Carnell's criminal history at the

---

[1] Unless otherwise noted, all references are to the 2018 version of the United States Sentencing Guidelines.

2

resentencing and by "verbally attacking" him.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court determined that it was plain from the motion and the record of the prior proceedings that the petitioner was not entitled to relief on Ground 2. It then ordered the Government to respond to Ground 1. The Court now addresses the merits of that claim.

**II.   Analysis**

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019).

Carnell asserts that his counsel was constitutionally ineffective. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective

3

representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

Carnell's claims counsel erred at two distinct points: his open plea of guilty in November 2018 and his withdrawal of objections to the PSR at his original sentencing in June 2019 (which effectively also applied to his resentencing in June 2021).

A. Guilty Plea

Carnell claims Elovitz was constitutionally ineffective in his advice leading up to his guilty plea in November 2018. Specifically, he claims that Elovitz lied about the estimated length of Carnell's potential sentence and coerced and threatened him to force him to plead guilty.

1. Estimated Length of Potential Sentence

The Court first addresses counsel's advice about the potential length of Carnell's sentence. Competent counsel must attempt to learn the relevant facts, make a reasonably accurate estimate of a defendant's likely sentence, and communicate that estimate to the defendant when the defendant is contemplating a guilty plea. *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (citing *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2017)).

The evidence before the Court includes an assertion by Carnell that Elovitz "lied about the amount of time that was possible" if he changed his plea to guilty. Pet'r's § 2255 Mot. 4 (Doc. 1 at 4). For the Government, Elovitz has submitted an unsworn statement in which he states that he never lied to Carnell about a potential sentence. In the plea hearing transcript,

4

Elovitz stated he had estimated Carnell's criminal history category range to be between II and IV (which ended up being III at his first sentencing), and Carnell confirmed that he had talked with Elovitz about how the sentencing guidelines might apply in his case. Elovitz clearly talked to Carnell about possible sentences under the guidelines. It is also clear that relevant conduct was in issue, making an exact estimate impossible, so reasonable counsel could only make a good faith estimate. Without more details about what Elovitz allegedly told Carnell about his potential sentence that was wrong or a "lie," Carnell cannot carry his burden of showing Elovitz's estimate of his sentence was unreasonable and that Elovitz was constitutionally ineffective.

Further, Carnell cannot establish he was prejudiced by any inaccurate advice from Elovitz. To satisfy the second *Strickland* prong where a defendant pleads guilty, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Lee v. United States*, 582 U.S. 357, 364 (2017). To show prejudice from inaccurate advice about the length of a potential sentence prior to a guilty plea, a petitioner must show that his counsel's deficient advice was "a decisive factor" in his decision to plead guilty instead of going to trial. *See Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). "[A] defendant's mere allegation that he would have chosen a path other than the . . . plea is insufficient by itself to establish prejudice." *Wyatt*, 574 F.3d at 458 (citing *Bethel v. United States,* 458 F.3d 711, 718 (7th Cir. 2006)).

As a preliminary matter, during the plea colloquy, the Court informed Carnell that his sentencing range was 5 to 40 years in prison, so he was well aware of the outside bounds of a possible sentence. Furthermore, the objective facts show that a guilty plea still offered some

5

potential benefit to Carnell.  The plea transcript shows that his criminal history as well as the nature and amount of relevant conduct were all in dispute at the time he pleaded guilty.  However, Carnell admitted in a post-arrest interview with law enforcement officers that he provided two codefendants with 1,474.2 grams of methamphetamine; other witnesses put the amount even higher than that.  Thus, even based on Carnell's own statements, there was strong evidence of his guilt.  *Regardless of what the relevant conduct finding ultimately was*, if Carnell pleaded guilty and made no frivolous objections, he was in line for a 3-point acceptance of responsibility reduction in offense level.  With only Carnell's unsupported say-so, the Court cannot say that there is a reasonable probability that he would have forfeited this potential benefit in light of his own admission of relevant conduct.  Telling is the fact that, at no time after Carnell got the original PSR with a sentencing range of 168 to 210 months, *see* Init. PSR § 18, did he ask to withdraw his guilty plea.  Carnell has not shown any objective evidence that, had Elovitz given him different advice about his potential sentence, he would not have pleaded guilty and would have instead gone to trial.

        2.      Threats and Coercion

Carnell asserts that Elovitz coerced him to plea guilty by threatening him.  It should go without saying that an attorney may not coerce or threaten a defendant to get him to plead guilty when he would not have done so of his own free will.  Such a plea would have been void as involuntary and would have violated his Fifth Amendment due process rights.  *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  When counsel does the improper coercing, it also violates a defendant's Sixth Amendment rights.  *See Hill v. Lockhart*, 474 U.S.

6

52, 59 (1985).

But in the plea colloquy, Carnell testified under oath twice that no one had made any threats or promises to induce him to plead guilty and once that he was pleading guilty as his own free and voluntary act.   Carnell also testified that he was happy with Elovitz's counsel, representation, and advice as his attorney.   If Elovitz had threatened him or coerced him into pleading guilty, this would have been the time to say so, but Carnell said nothing about it.[2] These statements, and the rest of the plea colloquy, led the Court to find Carnell had knowingly, voluntarily, and competently pleaded guilty.   Such statements and findings cannot be easily dismissed.

"[T]he representations of the defendant . . . at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

> When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else.   The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing.   Because the court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the criminal defendant do so as well.   For that reason, a defendant is normally bound by the representations he makes to a court during the colloquy.

*Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (internal quotations and citations

---

[2] In the Court's experience, a defendant often takes as a "threat" his counsel's accurate assessment of the very real consequences of taking one or another path in a criminal case.   By the time a defendant is facing federal criminal charges, usually most good options have gone away.

7

omitted).   The petitioner bears a heavy burden of overcoming the presumption that his sworn plea colloquy statements were true.  *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012).

Carnell has not come close to overcoming the presumption that his sworn statements in the plea colloquy were true.   In fact, he offers no explanation whatsoever why the Court should disregard those earlier statements in favor of his current ones.   In light of Carnell's earlier statements, the Court cannot find counsel coerced, threatened, or made improper promises to Carnell to induce him to plead guilty.   Elovitz was simply not deficient in this regard.   Carnell is not entitled to § 2255 relief on this ground.

B.   Withdrawal of Objections to PSR

Carnell alleges Elovitz was constitutionally ineffective when he advised Carnell to withdraw certain relevant conduct objections lodged in response to the original PSR.   Carnell claims that he convinced him to do this by misrepresenting that if he did not, he would be subject to a sentence of 20 years or more.   Carnell suggests he got a sentence of 20 years or more anyway.   Carnell says Elovitz placed him under duress to get him to withdraw the objections.

As noted above, the PSR recommended relevant conduct of 2.37 kilograms of methamphetamine "ice" based on interviews with confidential sources and codefendants.   *See* Init. PSR ¶ 18.   Carnell objected to the use of the "ice" guideline as opposed to the "mixture and substance" guideline, Def.'s Obj. to Init. PSR ¶¶ 2-6, 8 (No. 18-cr-40066-1; Doc. 71), and he objected to the use of relevant conduct from his codefendants and unidentified, unreliable confidential sources and to relevant conduct that was double-counted, *id.* at ¶¶ 9-13, 15.   He argued that the drug amount he revealed in his post-arrest interview—1,474.2 grams—was a

more accurate figure to use for relevant conduct, so his base offense level should have fallen into the lower guideline category of 500 grams to 1.5 kilograms of methamphetamine.  *Id.* at ¶ 14. His objections to the sources providing information about relevant conduct were standard fare—unreliable witnesses, lack of detail or corroboration, double-counting, etc.

Before the sentencing hearing in June 2019, Elovitz advised Carnell to withdraw his objections to the relevant conduct weight and to stipulate to 2.37 kilograms of whatever form of methamphetamine the Court decided was appropriate.   Elovitz states that he made this recommendation so Carnell would not risk losing a 2-point offense level reduction for acceptance of responsibility by falsely, frivolously, or wrongly contesting relevant conduct.   At the hearing, Carnell confirmed that he was withdrawing his objections to weight knowingly, voluntarily, and competently.   As noted earlier, the Court sentenced Carnell to serve 192 months in prison, within the guideline range of 168 to 210 months.

The Court first addresses Elovitz's performance.   He was not deficient for recommending Carnell withdraw his objections to the PSR's relevant conduct weight or for telling Carnell his sentence could be more than 20 years in prison if he did not.   Although Carnell contested his criminal history category, the initial PSR determined he was in category III. *See* Init. PSR ¶ 48.   The PSR's relevant conduct finding was 2.37 kilograms of methamphetamine "ice," which placed him at base offense level 36.   *See* Init. PSR ¶ 18.   With a 3-point offense level reduction for timely acceptance of responsibility and a criminal history category III, Carnell's guideline sentencing range was 168 to 210 months.   Without the 3-point reduction, his guideline sentencing range would have been 235 to 293 months in prison, the sentence of "20 years or more" Carnell says Elovitz used to place him under duress.

9

Elovitz's warning was warranted because the 3-point reduction for acceptance of responsibility is not available if a defendant falsely denies or frivolously contests relevant conduct, U.S.S.G.§ 3E1.1 cmt. n. 1(A), which the Court could have found Carnell was doing with his objection to the relevant conduct amount. Carnell had already admitted to amounts that placed him within a hair's breadth of the same base offense level of 36, 1,474.2 grams of what he called "ice" in his post-arrest interview; objections to that amount would have been frivolous. And the Government could likely have called witnesses to testify to amounts to cover the 25.8-gram balance between the 1,474.2 grams and 1.5 kilograms without double-counting. *See* Init. PSR ¶ 9. In these circumstances, it was within the range of competent attorney performance to advise Carnell to secure the 3-point reduction—and the lower guideline sentencing range—by withdrawing pro forma objections to the relevant conduct amount. Any duress Carnell felt when following that advice was natural when he faced a potential 20-year sentence, but that was not of Elovitz's making. And despite what he claims, Carnell did not get a 20-year sentence anyway; he was sentenced to 192 months at first and later to 165 months.

The Court notes that counsel was extremely effecting in pursuing the objection to the *nature* of the relevant conduct—"ice" v. a "mixture and substance"—in this Court and on appeal to the point of changing circuit law for many methamphetamine offenders. Counsel recognized this as a more fruitful argument, which ended up leading to a resentencing based on the lower "mixture and substance" guidelines *with* a 3-point acceptance of responsibility reduction.

Counsel's overall performance with respect to sentencing was well within the range of reasonably competent counsel. Consequently, § 2255 relief is not available on that basis.

**III.     Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 580 U.S. 100, 115 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).   The Court finds that Carnell has not made such a showing and, accordingly, declines to issue a certificate of appealability.

**IV.     Conclusion**

Because the motion briefing and the records of his criminal case conclusively demonstrate that Carnell is not entitled to relief, the Court **DENIES** Carnell's § 2255 motion (Doc. 1), **DECLINES** to issue a certificate of appealability, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   April 25, 2025**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**